[Civ. No. 2963.   Third Appellate District.—November 6, 1925.]

## JOHN C. CAREY, Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE — COLLISION WITH STREET-CAR — FAILURE TO GIVE WARNING—NEGATIVE EVIDENCE—PROVINCE OF JURY.—In an action for damages for personal injuries resulting from a collision between plaintiff's automobile and defendant's street-car on a dark and foggy night, the weight to be given to negative testimony to the effect that the witness did not see or hear the street-car until the instant of the collision, that it sounded no bell that he could hear, and that he heard no bell or signal of any kind, is a question for the jury, and such negative evidence is sufficient to sustain a verdict in favor of plaintiff, even though it conflict with other evidence to the effect that a warning was actually given.

[2] ID.—CONTRIBUTORY NEGLIGENCE—CONFLICTING EVIDENCE—INFERENCES.—In this action for damages for personal injuries resulting from a collision between plaintiff's automobile and defendant's street-car, while there was ample evidence upon which to have based a finding of contributory negligence, it could not be held as a matter of law, contrary to the implied finding of the jury, that plaintiff was guilty of negligence, as the jury may have inferred from the evidence that plaintiff was proceeding with due care, that he reasonably looked to the left to see if a street-car was approaching along the intersecting street, that he did not see defendant's car, by reason of the dimness of the lights thereof in the fog, or hear its approach, and that the motorman did not sound the bell or give any warning of the approach thereof.

[3] ID.—CONTRIBUTORY NEGLIGENCE—QUESTION OF LAW—EVIDENCE—INFERENCES.—Contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury.

[4] ID.—STOP, LOOK AND LISTEN RULE—APPLICATION TO STREET RAILROADS—CARE REQUIRED.—The duty of stopping, looking, and listening made incumbent upon one about to cross the right of way of a steam railroad is not the rule governing the rights of

1.   See 10 Cal. Jur. 1159; 10 R. C. L. 1010.
2.   See 19 Cal. Jur. 735.
3.   See 19 Cal. Jur. 738.
4.   See 23 Cal. Jur. 881; 25 R. C. L. 1277.

foot-passengers and vehicle drivers in venturing upon, crossing, or using the tracks of a street railroad, but the duty of such is no higher than or different in law from the duty of the company operating the electric car saving in the one particular that, because the car is confined to its tracks, vehicles and foot-passengers must give way to clear its passage.

[5] ID.—REFERENCE TO COLLISION—CONSISTENT INSTRUCTIONS.—In this action for damages for personal injuries resulting from a collision between plaintiff's automobile and defendant's street-car, there was no inconsistency between the reference in some of the instructions to defendant's street-car as the car "which collided with the automobile" of plaintiff, and the reference in other instructions framed by defendant's counsel and given at his request wherein the automobile was referred to as in "collision with the defendant's street-car."

[6] ID.—CARE EXERCISED—FAILURE TO GIVE WARNING—VERDICT—INSTRUCTIONS.—In such action, the instruction to the jury that if they believed from the evidence that plaintiff "was exercising reasonable care for his own safety, and that the defendant operated said car which collided with said automobile . . . at a rate of speed in excess of what a prudent person would have operated said car under like circumstances toward said automobile" and plaintiff "did not know, and in the exercise of ordinary care could not have learned of the approach of said car until his automobile was on the northerly track of said defendant . . . and too late for him to have avoided the accident, and the said defendant failed to . give" plaintiff "any warning whatsoever of any kind of the approach of said car toward said automobile in sufficient time to enable" plaintiff "to get out of the way of said approaching car, and by reason thereof, and without any contributory negligence of any kind on the part of" plaintiff, "said car collided with said automobile and inflicted injuries" upon plaintiff, then a verdict should be returned in his favor, did not assume the existence of disputed facts, and such instruction was not erroneous, where there was evidence sufficient to warrant the inference that the facts were as enumerated therein.

[7] ID.—EXCESSIVE SPEED OF STREET-CAR—EVIDENCE.—In such action, the photographs of the wrecked automobile and the street-car and the testimony of the witnesses to the effect that the night was dark and foggy, that plaintiff looked for but did not see the approaching car or hear any bell sounded or warning given, and that the motorman, after seeing plaintiff's automobile, was unable to stop the street-car in time to avoid the accident, considered together, were sufficient to justify the inference that the street-car was being run at a rate of speed in excess of what a prudent person would have operated said car under

like circumstances, and the mere fact that the street-car was not exceeding the speed limit fixed by statute or ordinance was not conclusive upon the question whether it was running at a negligently excessive rate of speed.

[8] ID.—ABSENCE OF WARNING—ASSUMPTION THAT PLAINTIFF WOULD AVOID COLLISION—ERRONEOUS INSTRUCTION.—In such action, plaintiff's main reliance having been upon defendant's failure to give warning of the approach of the street-car, and there having been sufficient evidence to warrant the inference that no warning was given, the trial court did not err in refusing to give defendant's requested instruction that "defendant's motorman had the right to assume that the plaintiff would exercise due care in approaching defendant's car tracks. He had the right to presume that plaintiff would stop or turn aside, until the conduct of plaintiff was such as should reasonably have led him to apprehend the contrary. So long as it appeared that plaintiff with reasonable care, could stop his automobile or turn it to one side or the other, so as to avoid a collision, and there was no obvious indications that he might not do so, the motorman had the right to assume that he would do so and upon that assumption proceed along the track."

(1) 23 C. J., p. 45, n. 95, 96; 36 Cyc., p. 1584, n. 20, p. 1604, n. 25, p. 1620, n. 15; 38 Cyc., p. 1516, n. 57.   (2) 36 Cyc., p. 1622, n. 27.   (3) 36 Cyc., p. 1623, n. 30 New.   (4) 36 Cyc., p. 1495, n. 15, p. 1539, n. 71.   (5) 11 C. J., p. 1002, n. 22 New; 36 Cyc., p. 1635, n. 91.   (6) 36 Cyc., p. 1638, n. 7; 38 Cyc., p. 1666, n. 83.   (7) 36 Cyc., p. 1481, n. 28, 29, 30, p. 1604, n. 28.   (8) 36 Cyc., p. 1517, n. 55, p. 1519, n. 61, p. 1637, n. 99, p. 1640, n. 18, p. 1641, n. 20; 38 Cyc., p. 1632, n. 10, p. 1633, n. 12, p. 1711, n. 19.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thos. J. Straub, Leo. H. Susman and W. H. Hatfield for Appellant.

Martin I. Welsh and Robert H. Schwab for Respondent.

FINCH, P. J.—The plaintiff was given judgment for damages resulting from a collision between his automobile and one of the defendant's street-cars in the city of Sacramento. The defendant prosecutes this appeal from the judgment. Appellant contends that the evidence not only

fails to show that it was negligent, but that it shows conclusively that the plaintiff was guilty of contributory negligence.

At the time of the collision the plaintiff was driving his automobile south along Fourteenth Street and near the west curb line thereof and defendant's street-car was going west along the north car tracks of K Street. Both streets are forty-eight feet wide from curb to curb. Photographs of the automobile and of the street-car, taken after the accident, indicate that they were both moving with considerable velocity at the time of the impact. The evidence is sufficient to warrant the inference that the street-car ran into the automobile rather than that the automoilbe ran into the street-car. The front bumper of the automobile was not bent or injured, but the left front wheel was demolished and the left front fender and the left door were badly crushed and broken. The front wheels of the street-car were forced off the rails of the track and, according to the testimony of the motorman, the street-car thereafter moved forward about four and a half feet before coming to a stop. The automobile was a new Stephens roadster and the side curtains were in place and the windshield was closed. There is no contention that the plaintiff was not severely injured. The evidence bearing upon the questions of negligence and contributory negligence is sharply conflicting.

[1] The plaintiff testified that he did not see or hear the street-car until the instant of the collision, that it sounded no bell that he could hear, that he heard no bell or signal of any kind, and that his sight and hearing were good. He also testified that the night was "very foggy." Another witness testified that he was driving a Ford touring car west on K Street and had reached a point "about 16 or 17 feet" west of the west curb line of Fourteenth Street when he heard the collision, that it was a "very foggy and dark" night, that he was driving with his head "outside the windshield" because he could not see through the glass "on account of the fog," that he heard no bell or signal, and that his hearing was "all right that evening." The motorman and the conductor on the street-car testified that the former rang the bell as he approached the intersection and rang it violently while passing through the intersection, he having seen plaintiff's automobile when the

street-car was about twenty-five feet east of the crossing. The weight to be given to negative testimony of the character of that produced by the plaintiff is a question for the jury, and "it has frequently been held that negative evidence of this character is sufficient to sustain a verdict, . . . even though it conflict with other evidence to the effect that a warning was actually given." (*Keena* v. *United Railroads of San Francisco,* 197 Cal. 148 [239 Pac. 1061]; *Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748 [134 Pac. 709]; *Jones* v. *Southern Pacific Co.,* 74 Cal. App. 10 [239 Pac. 429].) Whatever opinion may be entertained as to the preponderance of the evidence upon the issue of negligence, it is clear that there is sufficient evidence to sustain the implied finding of the jury that the defendant was negligent.

The burden of proving contributory negligence was upon defendant. "Where contributory negligence is set up as a defense, it seldom happens that the question is so clear from doubt that the court can undertake to say as a matter of law how the jury should find upon the issue." (19 Cal. Jur. 735, and cases there cited.) The plaintiff testified that he had driven south for the length of three blocks on Fourteenth Street before the accident; that the night was "very foggy"; that the windshield "was covered with fog to some extent"; that it was equipped with a hand-wiper which he used before starting, but not afterward; that his headlights were adjusted to official requirements and were turned on and he could see objects ahead "possibly fifteen or twenty feet"; that he was traveling eight or ten miles an hour and could have stopped his automobile in eight feet; that from a point twenty-five feet north of the north curb line on K Street he "could see just past the corner" of a building at the northeast corner of the intersection, which appears to have been some fifty feet distant; that from the time he reached said point he looked to his left up K Street for "quite a while," but saw no street-car; that he then looked to the right, then "straight ahead," and that as he was turning to look to the left again the collision occurred. The plaintiff also testified that it was "relatively quiet on the inside" of his automobile, that his eyesight and hearing were good, but that he did not see or hear the street-car or hear the bell thereof or other signal. The driver of the Ford touring-car referred to testified that,

on hearing the collision, he "pulled up to the curb" and looked back, and that he could "just barely see the light in the street car" but could not see "the form of the street car." The plaintiff testified that it was dark "at the intersection." Several witnesses for defendant testified that there were street lights at the intersection and that the street-car and other objects could be seen from points a block or more distant therefrom; that as the plaintiff approached the intersection he was traveling at a high and unlawful rate of speed; that at the time the street-car entered the intersection it was moving, with the power turned off, at a speed of about fifteen miles an hour. The motorman testified that at that time he applied the brakes and stopped the car "just as soon as I could"; and that when running at the rate of fifteen miles an hour the street-car could not be stopped under eighty feet.

It was stipulated at the trial that the ordinances of the city of Sacramento permitted street-cars to run at not to exceed twenty-five miles an hour in that part of the city where the accident occurred and gave street-cars "the right of way over vehicles" at intersections.

[2] While there is ample evidence upon which to have based a finding of contributory negligence, it cannot be held as a matter of law, contrary to the implied finding of the jury, that the plaintiff was guilty of negligence. The jury may have inferred from the foregoing evidence that the plaintiff was proceeding with due care; that he reasonably looked to the left to see if a street-car was approaching along K Street; that he did not see defendant's car, by reason of the dimness of the lights thereof in the fog, or hear its approach; and that the motorman did not sound the bell or give any warning of the approach thereof. [3] "Contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury." (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125].) [4] "The duty of stopping, looking, and listening made incumbent upon one about to cross the right of way of a steam railroad is not the rule governing the rights of foot-passengers and vehicle drivers in venturing upon, crossing, or using the tracks of a street

railroad. The duty of such is no higher than or different in law from the duty of the company operating the electric car saving in the one particular so often pointed out that because the car is confined to its tracks, vehicles and foot-passengers must give way to clear its passage." (*Runnels* v. *United Railroads*, 175 Cal. 528, 531 [166 Pac. 18, 20].) In a case involving a collision between a street-car and an automobile it is said: "The failure of plaintiff to look and listen . . . was . . . not, as a matter of law, negligence on his part, but at most, a question to be determined by the jury." (*Bidwell* v. *Los Angeles etc. Ry. Co.,* 169 Cal. 780, 783 [148 Pac. 197, 199].)

[5] In some of the instructions the court referred to defendant's street-car as the car "which collided with the automobile" of plaintiff. Appellant argues that such language "tended to create in the minds of the jury an impression that the court believed that appellant's street car did collide with the automobile rather than the automobile with the street car." In another instruction framed by defendant's counsel and given at defendant's request the automobile is referred to as in "collision with the defendant's street car." There is no inconsistency between the two expressions. The definition of "collide" is, "To strike or dash against each other; to come into collision," and the jury doubtless so understood the language criticised by appellant. Counsel for both parties must have so understood the terms employed by them in framing their respective instructions. It is not of great importance whether the street-car or the automobile first reached the intersection of their paths, they having arrived at that point at approximately the same instant, but the material question for the jury to determine was whether the plaintiff or the defendant or both approached that point negligently.

[6] Appellant contends that the court erred in instructing the jury that if they believed from the evidence that the plaintiff "was exercising reasonable care for his own safety, and that the defendant operated said car which collided with said automobile . . . at a rate of speed in excess of what a prudent person would have operated said car under like circumstances toward said automobile" and plaintiff "did not know, and in the exercise of ordinary care could not have learned of the approach of said car until his

automobile was on the northerly tracks of said defendant . . . and too late for him to have avoided the accident, and the said defendant failed to give'' plaintiff ''any warning whatsoever of any kind of the approach of said car toward said automobile in sufficient time to enable'' plaintiff ''to get out of the way of said approaching car, and by reason thereof, and without any contributory negligence of any kind on the part of'' plaintiff, ''said car collided with said automobile and inflicted injuries'' upon plaintiff, then a verdict should be returned in his favor. There is evidence sufficient to warrant the inference that the facts were as enumerated in the instruction. The instruction does not, as appellant contends, assume the existence of any disputed fact, but tells the jury, in effect, that if they find the facts to be as stated therein their verdict should be for plaintiff. [7] The photographs of the wrecked automobile and of the street-car and the testimony of witnesses to the effect that the night was dark and foggy, that plaintiff looked for but did not see the approaching car or hear any bell sounded or warning given, and that the motorman, after seeing plaintiff's automobile, was unable to stop the street-car in time to avoid the accident, considered together, are sufficient to justify the inference that the street-car was being run ''at a rate of speed in excess of what a prudent person would have operated said car under like circumstances'' and that the other facts were as enumerated in the instruction. The mere fact that the street-car was not exceeding the speed limit fixed by statute or ordinance is not conclusive upon the question whether it was running at a negligently excessive rate of speed. (*Gross* v. *Burnside*, 186 Cal. 467, 469 [199 Pac. 780].) No error appears in the instruction.

[8] Complaint is made of the court's refusal to instruct the jury as follows: ''The defendant's motorman had the right to assume that the plaintiff would exercise due care in approaching defendant's car tracks. He had the right to presume that plaintiff would stop or turn aside, until the conduct of plaintiff was such as should reasonably have led him to apprehend the contrary. So long as it appeared that plaintiff with reasonable care, could stop his automobile or turn it to one side or the other, so as to avoid a collision, and there were no obvious indications that he might not do so, the motorman had the right to assume that

he would do so and upon that assumption to proceed along the track." The proposed instruction is substantially in the language of the decision in *Arnold* v. *San Francisco-Oakland T. Rys.*, 175 Cal. 1, 5 [164 Pac. 798]. As said in *Hall* v. *San Francisco*, 188 Cal. 641, 643 [206 Pac. 459]: "the instruction is an illustration of the dangers of attempting to frame a charge to the jury upon isolated extracts from opinions of this court." In the Arnold case the driver of the automobile saw the approaching car in time to have avoided the collision by the exercise of reasonable care on his part. Negligence of the defendant in that case, therefore, could not be based upon failure of the motorman to give warning of the approach of the car. In this case the plaintiff's main reliance was upon defendant's failure to give such a warning. The proposed instruction entirely ignores that issue. The case of *Wallis* v. *Southern Pacific Co.*, 184 Cal. 662, 673 [195 Pac. 408, 413], was an action for damages for the death of the driver of a team of horses in a railroad-crossing accident. When the engineer rounded a curve "some four or five hundred feet from the crossing he saw the heads of decedent's horses some ten feet from the tracks." The court said: "He immediately sounded the warning whistle. He doubtless believed, and had a right to believe, that the driver would at once stop his team and not attempt to cross the track. . . . He was justified in assuming that at the distance from which he sounded the warning, and with the headlight and noise of the approaching train, the driver would be warned of his danger." In this case there is sufficient evidence to justify the inference that no warning was given. The motorman certainly had no right to act upon the assumption that the plaintiff would stop or turn aside if no warning was given of the approach of the car, in the absence of any indication that the plaintiff was aware of its approach. The statements of law contained in other proposed instructions which the court refused to give were included in other instructions which were given. Other points made by appellant are sufficiently disposed of by what has already been said and need not be discussed separately.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 5, 1925, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 4, 1926.